## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IN RE:

      ALFRIEDA M. SHEPARD,           )

                                    )

THE ENCLAVE AT COUNTRY LAKES   )      Case Number: 18-19195

CONDOMINIUM ASSOCIATION,       )      Judge Janet S. Baer

an Illinois Not-For-Profit Corporation,    )      Bankruptcy - Chapter 7

                                    )

                Creditor,      )

                                    )

          v.                  )

                                    )

ALFRIEDA M. SHEPARD,         )

                Debtor.     )

## NOTICE OF MOTION

*TO:*    *See Attached Service List*

     On September 7, 2018 at 9:30 a.m., or as soon thereafter as counsel may be heard, I shall appear before the Honorable Judge Janet S. Baer, or any judge sitting in her stead, in Room 240 of the Kane County Courthouse, 100 S. Third Street, Geneva, IL 60134, and then and there present the attached ***Secured Creditor The Enclave at Country Lakes Condominium Association's Motion for Relief from Stay.***

CHARLES M. KEOUGH/DAWN L. MOODY
GABRIELLA R. COMSTOCK/JONATHAN D. WASSELL
BRYAN M. WILEY
KEOUGH AND MOODY, P.C.
Attorney Number 06283567
Attorney for Creditor
114 East Van Buren
Naperville, IL 60540
(630) 369-2700

   /s/ Dawn L. Moody
_____
Attorneys for Creditor

## PROOF OF SERVICE

     I, DAWN L. MOODY, an attorney, on oath state, I served this Notice and Motion for Relief from Stay to the persons named on the service list via the method listed at or before 4:00 p.m. on August 14, 2018.

                       /s/ Dawn L. Moody
                       _____

**KEOUGH & MOODY COLLECTS DEBTS FOR ASSOCIATIONS.  ANY AND ALL INFORMATION OBTAINED CAN AND WILL BE USED FOR THIS PURPOSE.**

## SERVICE LIST

1.      Alfrieda M. Shepard - via regular mail
        2580 Golf Ridge Circle
        Naperville, IL 60563

2.      Dennis W. Hoornstra - via regular mail and CM/ECF
        Law Office of Dennis W. Hoornstra
        100 W. Roosevelt Road
        Suite B-8
        Wheaton, IL 60187
        d.hoornstra@sbcglobal.net

3.      Glenn B. Stearns - via regular mail and CM/ECF
        801 Warrenville Road, Suite 650
        Lisle, IL 60532

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

IN RE:

|  |  |  |
|---|---|---|
| ALFRIEDA M. SHEPARD, | ) | |
| | ) | |
| THE ENCLAVE AT COUNTRY LAKES | ) | Case Number: 18-19195 |
| CONDOMINIUM ASSOCIATION, | ) | Judge Janet S. Baer |
| an Illinois Not-For-Profit Corporation, | ) | Bankruptcy - Chapter 7 |
| | ) | |
| Creditor, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALFRIEDA M. SHEPARD, | ) | |
| Debtor. | ) | |

**<u>SECURED CREDITOR THE ENCLAVE AT COUNTRY LAKES CONDOMINIUM
ASSOCIATION'S MOTION FOR RELIEF FROM STAY</u>**

NOW COMES the Secured Creditor, THE ENCLAVE AT COUNTRY LAKES CONDOMINIUM ASSOCIATION, by and through its counsel, Charles M. Keough, Dawn L. Moody, Gabriella R. Comstock, Jonathan D. Wassell and Bryan M. Wiley of Keough and Moody, P.C. who respectfully prays for the entry of an order granting relief from the automatic stay pursuant to 11 U.S.C. Section 362(d), and in support thereof states:

(1)    On July 9, 2018, the above captioned Chapter 7 was filed.

(2)    The Debtor, Alfrieda M. Shepard is the owner of a unit commonly known as 2580 Golf Ridge Circle, Naperville, IL 60563.

(3)    The foregoing property is part of The Enclave at Country Lakes Condominium Association and is subject to the provisions of the Amended and Restated Declaration of Condominium Ownership, Easements, Restrictions and Covenants and By-Laws for The Enclave at Country Lakes Condominium Association (hereinafter "Declaration"), which was recorded as Document No. R2016-007904 in the Office of the DuPage County Recorder of Deeds, and subsequently amended.

(4)    The Association is a party in interest and is secured by virtue of its Declaration.

(5)    Pursuant to the terms of the Declaration, the Debtor is required to make monthly assessment payments to the Creditor in the amount of $238.68.  If assessments are not paid by the last day of the month in which they are due, a late charge in the amount of $25.00 is assessed to the account.

(6)    Pursuant to the terms of the Declaration, the Debtor is required to pay all expenses connected with proceedings to collect unpaid assessments and enforce the Declaration terms.  These amounts are assessed to the Debtor and deemed a part of the Common Expenses.

(7)    The Debtor has failed to make current monthly assessment payments to the Creditor in conformity with the Declaration since prior to the filing of this bankruptcy action. Attached hereto is a true and accurate statement of account.

(8)    On October 29, 2015, judgment in a forcible entry and detainer action (eviction action) was entered against the unit owner, in the amount of $2,008.22 for unpaid assessments, $675.00 for attorneys fees and $297.00 for courts costs.  The stay for the order of possession has expired.

(9)    As of August 9, 2018, the amount due to the Creditor for assessments, late fees, attorney's fees is $8,737.65.

(10)    The property commonly known 2580 Golf Ridge Circle, Naperville, IL 60563 is not necessary for the Debtor's successful reorganization.

(11)    The Creditor lacks adequate protection due to the Debtor's failure to make regular, current monthly payments to the Creditor.

(12)    Debtor's failure to make assessment payments jeopardizes the Creditor's ability to meet its

scheduled budget or fund reserves, both of which are essential to the maintenance, upkeep,

repair and replacement of the common areas as required by the Creditor pursuant to the

Declaration recorded in DuPage County, Illinois.

(13)    For the reasons set forth above, it would be inequitable to delay the enforcement of any order

granting relief from the automatic stay with respect to the Creditor; therefore, Bankruptcy

Rule 4001(a)(3) should be waived.

WHEREFORE, Creditor, THE ENCLAVE AT COUNTRY LAKES CONDOMINIUM

ASSOCIATION, respectfully requests this court to grant its MOTION FOR RELIEF FROM STAY,

for Bankruptcy Rule 4001(a)(3) be waived, and for any and all further relief this court deems just

and proper.

Respectfully Submitted,
THE ENCLAVE AT COUNTRY LAKES
CONDOMINIUM ASSOCIATION,


By:  _____/s/ Dawn L. Moody_____
One of its attorneys


CHARLES M. KEOUGH/DAWN L. MOODY
GABRIELLA R. COMSTOCK/JONATHAN D. WASSELL
BRYAN M. WILEY
KEOUGH AND MOODY, P.C.
Attorney Number 06283567
Attorney for Creditor
114 Est Van Buren
Naperville, IL 60540
(630) 369-2700
X:\client\Enclave at Country Lakes\collection\Shepard\BK 18-19195\Mt. Relief.wpd


**KEOUGH & MOODY COLLECTS DEBTS FOR ASSOCIATIONS.  ANY AND ALL
INFORMATION OBTAINED CAN AND WILL BE USED FOR THIS PURPOSE.**

OTHER
**R2016-007904**

**FRED BUCHOLZ**
**COUNTY RECORDER**
**DUPAGE COUNTY, IL**
**RECORDED ON**
**01/26/2016 09:34 AM**
**07-09-310-237**
**PAGES: 110**
**RHSP**
**146.00**

Recording Cover Page

## AMENDED AND RESTATED DECLARATION OF CONDOMINIUM OWNERSHIP EASEMENTS, RESTRICTIONS AND COVENANTS AND BY-LAWS FOR THE ENCLAVE AT COUNTRY LAKES CONDOMINIUM ASSOCIATION

Document prepared by and when
Recorded return to:
Keough & Moody, P.C.
1250 E. Diehl Road, Suite 405
Naperville, IL 60563
630-369-2700

## AMENDED AND RESTATED DECLARATION OF CONDOMINIUM OWNERSHIP EASEMENTS, RESTRICTIONS AND COVENANTS AND BY-LAWS FOR THE ENCLAVE AT COUNTRY LAKES CONDOMINIUM ASSOCIATION

This Amended and Restated Declaration of Condominium Ownership has been approved by two-thirds of the members of its Board of Directors, pursuant to Section 27(b)(1) of the Illinois Condominium Property Act, 765 ILCS 605/27.

### WITNESSETH THAT:

WHEREAS, Pinnacle was the legal title holder of the following described real estate situated in the County of DuPage and State of Illinois:

See Attached Exhibit "B"

WHEREAS, it was the desire and intention of Pinnacle to submit the Property to the provisions of the Condominium Property Act of the State of Illinois, as amended from time to time; and

WHEREAS, Pinnacle elected by the original Declaration, which was recorded as document number R1999-233931, as subsequently amended ("original Declaration"), to establish, for the benefit of it  and for the mutual benefit of all current and future Unit Owners or occupants of the Property, or any part thereof, which shall be known as The Enclave at Country Lakes Condominium Association, certain easements and rights in, over and upon said real estate and certain mutually beneficial restrictions and obligations with respect to the proper use, conduct and maintenance thereof; and

WHEREAS, Pinnacle further elected by the original Declaration to declare that the several Unit Owners, occupants, mortgagees and other persons acquiring any interest in the Property shall at all times enjoy the benefits of, and shall at all times hold their interests subject to the rights, easements, privileges and restrictions hereinafter set forth, all of which are declared to be in furtherance of a plan to promote and protect the co-operative aspect of ownership and to facilitate the proper administration of such Property and are established for the purpose of enhancing and perfecting the value, desirability and attractiveness of the Property.

WHEREAS, the Board of Directors has elected to adopt an Amended and Restated Declaration in order to bring the terms of the same into compliance with the Illinois Condominium Property Act, 765 ILCS 605/1 et seq.; and

NOW THEREFORE, the Declaration is amended and restated as follows:

## ARTICLE I

## DEFINITIONS

For the purpose of brevity and clarity, certain words and terms used in this Amended and Restated Declaration are defined as follows:

a) Act: The Condominium Property Act of the State of Illinois, as amended from time to time.

b) Association: The Association of all the Unit Owners acting pursuant to the Bylaws attached hereto as Exhibit "D", through its duly elected Board.

c) Board: The Board of Directors of the Association as constituted at any time and from time to time.

d) Buildings: All structure, attached or unattached, containing one of more Unit.

e) Bylaws: The Amended and Restated Bylaws of the Association, which are attached hereto as Exhibit "D"

f) Common Elements: All portions of the Property except the Units, including, limited common elements, unless otherwise specified, entryway monuments and associated landscaping and fencing, detentions ponds, associated landscaping and stormwater structures (outlot A in Country Lakes Areas 4 and 5 – Unit One and wetland/open space in Country Lakes Areas 4 and 5 – Unit Two), landscaping islands in cul-de-sac, if any, on the Property (or in the adjoining Lot 11 as provided pursuant to an Easement granted to the Association as described within the Plat). Outlots C and D are expressly excluded from the Common Elements, as they were taken by the Forest Preserve District of DuPage County, Illinois, although the Association shall be solely responsible for all maintenance, mitigation, enhancement and any other responsibilities or obligations arising out of, or related to, Outlot C, pursuant to the terms and conditions of the Final Judgment Order filed on August 22, 2001 as Case No. 00 ED 34, described in Exhibit "F" attached hereto and made a part hereof.

g) Common Expenses: The proposed or actual expenses affecting the Property, including the Reserves, if any, lawfully assessed by the Board.

h) Condominium Instruments: All documents and authorized amendments thereto recorded pursuant to the provisions of the Act, including the Declaration, Bylaws and Plat.

## ARTICLE VII

## REMEDIES

1. <u>Violations.</u> Upon the occurrence of any one or more of the following events, the Board shall have the rights and remedies set forth in Section 2 of this Article:

(a)    Failure by a Unit Owner to pay when due any sums required to be paid by such Unit Owner pursuant to any provisions of this Declaration, for thirty (30) days after written notice of such non-payment shall have been given such Unit Owner; provided that such defaulting Unit Owner shall not be entitled to written notice and opportunity to cure such failure if such Unit Owner has been given three or more notices pursuant to this Section during the twelve (12) month period immediately preceding the first day of such failure.

(b)    Violation or breach by a Unit Owner (or any occupant of his Unit) of any provision, covenant or restriction of the Act, Declaration, the By-Laws, contractual obligation to the Board or Association undertaken by such Unit Owner, or rules and regulations promulgated by the Board, and continuation of such violation or breach for thirty (30) days after written notice thereof shall have been given such Unit Owner, provided that such defaulting Unit Owner shall not be entitled to written notice and opportunity to correct such violation nor breach if such Unit Owner has been given three or more notices pursuant to this Section during the twelve (12) month period immediately preceding the first day of such violation or breach.

2. <u>Remedies.</u> Upon the occurrence of any one or more of the events described in Section 1 above, the Board shall have the following rights and remedies:

(a)    The Board shall have the right to immediate possession of the defaulting Unit Owner's Unit after service by the board on such Unit Owner of a notice to quit and deliver up possession which right may be enforced by an action for possession under "An Act in Regard to Forcible Entry and Detainer," approved February 16, 1874, as amended.

(b)    For a violation or breach described in Section 1(b) hereof, the Board shall have the right: (i) to enter upon that part of the Property where such violation or breach exists and summarily abate and remove or do whatever else may be necessary to correct, at the expense of the defaulting Unit Owner, any such violation or breach or the cause of such violation or breach, and the Declarant, or Developer, or their successors or assigns, or the Board, or its agents, shall not thereby be deemed guilty in any manner or trespass; or (ii) to enjoin, abate, or remedy by a proceeding at law or in equity the continuance of any such violation or breach.

FRED BUCHOLZ     R2016-007904     DUPAGE COUNTY RECORDER

(c)    Upon the occurrence of one of the events described in Section 1(a) hereof, including without limitation, failure by a Unit Owner to pay his percentage share of Common Expenses or user charges, the Board shall have a lien on the interest of the defaulting Unit Owner in his Unit Ownership in the amount of any sums due from such Unit Owner; provided, however, that such lien shall be subordinate to the lien of a prior recorded first mortgage on the interest of such Unit Owner. Except as hereinafter provided, the lien provided for in this Section shall not be affected by any transfer of title to the Unit Ownership. Where title to the Unit Ownership is transferred pursuant to a decree of foreclosure or by deed or assignment in lieu of foreclosure, such transfer of title shall, to the extent permitted by law, extinguish the lien described in this Section for any sums which became due prior to (i) the date of the transfer of title or (ii) the date on which the transferee comes into possession of the Unit, whichever occurs first. However, the transferee of a Unit Ownership shall be liable for his share of any sums with respect to which a lien against his Unit Ownership has been extinguished pursuant to the preceding sentence which are reallocated among the Unit Owners pursuant to a subsequently adopted annual revised or special assessment, and non-payment thereof by such transferee shall result in a lien against the transferee's Unit Ownership as provided in this Section.

(d)    The Board shall have the power to issue to the defaulting Unit Owner a ten (10) day notice in writing to terminate the right of said defaulting Unit Owner to continue as a Unit Owner and to continue to occupy, use, or control his Unit and thereupon an action may be filed by the board against the defaulting Unit Owner for a decree declaring the termination of the defaulting Unit Owner's right to occupy, use or control the Unit owned by him and ordering that all the right, title and interest of said defaulting Unit Owner in the Property shall be sold at a judicial sale, upon such notice and terms as the court shall determine, except that the court shall enjoin and restrain the defaulting Unit Owner from reacquiring his interest in the Unit Ownership at such judicial sale. It shall be a condition of any such sale, and the decree shall so provide, that the purchaser shall take the interest in the Unit Ownership sold subject to this Declaration. The proceeds of any such judicial sale shall first be paid to discharge court costs, court reporter charges, reasonable attorneys' fees, and all other expenses of the proceeding and sale, and all such items shall be taxed against the defaulting Unit Owner in said decree. Any balance of proceeds, after satisfaction of such charges and any unpaid assessments or other sums due hereunder or any liens, shall be paid to the defaulting Unit Owner. Upon the confirmation of such sale, the purchaser at such sale shall be entitled to a deed to the Unit Ownership and to immediate possession of the Unit sold and may apply to the court for a writ of assistance for the purpose of acquiring such possession.

(e)    In addition to or in conjunction with the remedies set forth above, the Board or its agents shall have the right to bring an action at law or in equity against the Unit Owner or occupant of the Unit as permitted by law including, without limitation, an action (i) to foreclose a lien against the Unit Ownership, (ii) for damages, injunctive relief, or specific performance, (iii) for judgment or for the

payment of money and the collection thereof, (iv) for any other relief which the Board may deem necessary or appropriate. Any and all rights and remedies provided for in the Act, this Declaration, the By-Laws, contractual obligation to the Board or Association undertaken by such Unit Owner, or rules and regulations promulgated by the Board may be exercised at any time and from time to time cumulatively or otherwise by the Board in its discretion. The failure of the Board to exercise any such rights or remedies to enforce any provisions of this Declaration, the By-Laws or rules and regulations of the Board shall in no event be deemed a waiver of the right to do so thereafter.

 (f) <u>Intentionally omitted</u>

 (g) All expenses incurred by the Board in connection with any actions, proceedings, or self-help in connection with the exercise of its rights and remedies under this Article, including without limitation, court costs, reasonable attorneys' fees and all other fees and expenses, and all damages, together with interest thereon at the rate of eighteen percent (18%) per annum shall be charged to and assessed against the defaulting Unit Owner, and shall be added to and deemed part of his respective share of the Common Expenses, and the Board shall have a lien for all of the same upon the Unit Ownership of such defaulting Unit Owner and upon all of his additions and improvements thereto.

 3. <u>Enforcement by Unit Owners.</u> Any aggrieved Unit Owner may enforce the provisions of this Declaration, the By-Laws, or any rules and regulations promulgated by the Board by an action at law or in equity against the defaulting Unit Owner (or occupant of his Unit) upon a violation or breach described in Section 2(b) hereof against any person or persons either to restrain such violation or breach or to recover damages.

## ARTICLE VIII

## COMMON EXPENSES, MORTGAGES AND REAL ESTATE TAXES

 1. <u>Common Expenses.</u> Each Unit Owner shall pay his proportionate share of the Common Expenses of administration, maintenance and repair of the Common Elements and of any other expenses incurred in conformance with the Declaration and Bylaws or otherwise lawfully agreed upon. Such proportionate share of the Common Expenses for each Unit Owner shall be in the same ratio as his percentage of ownership in the Common Elements. Payment thereof shall be in such amounts and at such times as determined in the manner provided in the Bylaws. If any Unit Owner shall fail or refuse to make any such payment of the Common Expenses when due, the amount thereof shall constitute a lien on the interest of such Unit Owner in the Property as provided in the Act.

 2. <u>Separate Mortgages.</u> Each Unit Owner shall have the right, subject to the provisions herein, to make a separate mortgage or encumbrance on his respective

Unit together with his respective ownership interest in the Common Elements. No Unit Owner shall have the right or authority to make or create or cause to be made or created any mortgage or encumbrance or other lien on or affecting the Property or any part thereof, except only to the extent of his Unit and his respective ownership interest in the Common Elements.

3. Separate Real Estate Taxes. It is understood that real estate taxes are to be separately taxed to each Unit Owner for his Unit and his corresponding percentage of ownership in the Common Elements, as provided in the Act. In the event that for any year such taxes are not separately taxed to each Unit Owner, but are taxed on the Property as a whole, then the Association shall collect from each Unit Owner his proportionate share thereof in accordance with his respective percentage of ownership of the Common Elements and such taxes, levied on the Property as a whole, shall be considered a Common Expense.

## ARTICLE IX

## INSURANCE

1. Fire and Hazard Insurance. The Board shall acquire as a Common Expense, a policy or policies of insurance as required by Section 12 of the Illinois Condominium Property Act insuring the Common Elements and the Units, including the limited common elements and except as otherwise determined by the Board of Directors, the bare walls, floors, and ceilings of the unit, against loss or damage from fire, lightening and other hazards contained in the customary fire and extended coverage, vandalism and malicious mischief endorsements for the full insurable replacement value of the Common Elements and the Units written in the name of and to require a provision in such policy that the proceeds thereof shall be payable to the members of the Board, as trustees for each of the Unit Owners in the percentages established in Exhibit "C".

All said policies of insurance (1) shall contain standard mortgage clause endorsements in favor of the mortgagee or mortgagees of each Unit, if any, as their respective interest may appear, (2) shall provide that the insurance, as to the interest of the Board shall not be invalidated by any act or neglect of any Unit Owner, (3) shall provide that notwithstanding any provision thereof which gives the insurer an election to restore damage in lieu of making a cash settlement therefore, such option shall not be exercisable in the event the Unit Owners elect to sell the Property or remove the Property from the provisions of the Act, (4) shall contain an endorsement to the effect that such policy shall not be terminated, cancelled or substantially modified without at least thirty (30) days' prior written notice to the mortgagee of each Unit, (5) shall contain a clause endorsement whereby the insurer waives any right to be subrogated to any claim against the Association, its officers, members of the Board, the Pinnacle, the Developer, the managing agent, if any, their respective employees and agents and the Unit Owners and Occupants, and (6) shall contain a "Replacement Cost Endorsement". The proceeds of such insurance shall be applied

EXHIBIT D

### AMENDED AND RESTATED BY-LAWS
### OF
### THE ENCLAVE AT COUNTRY LAKES CONDOMINIUM ASSOCIATION

### ARTICLE I

### GENERAL PROVISIONS

The Association is responsible for the overall administration of the Property through its duly elected Board. Whether or not incorporated, the Association shall have such powers, not inconsistent with the Act, as are now or may hereafter be granted by the General Not-For-Profit Corporation Act of the State of Illinois. The Association shall have and exercise all powers necessary or convenient to effect any or all of the purposes for which the Association is organized and to do every other act not inconsistent with law which may be appropriate to promote and attain the purposes set forth in the Act or the Condominium Instruments.

### ARTICLE II

### MEMBERS

Section 1. Classes of Members, Membership, and Termination Thereof. The Association shall have one class of Members. The designation of such class and the qualifications of the Members of such class shall be as follows:

Each Unit Member shall be a member of the Association, which membership shall terminate upon the sale or other disposition of such Member's Unit, at which time the new Unit Owner shall automatically become a Member of the Association. Such termination shall not relieve or release any such former Unit Owner from any liability or obligation incurred under or in any way connected with the condominium or the Association, during the period of such ownership and membership in the Association. Furthermore, such termination shall not impair any rights or remedies which the Board or others may have against such former Unit Owner arising from, or in any way connected with, such ownership and membership and the covenants and obligations incident thereto. No certificates of stock or other certificates evidencing membership shall be issued by the Association.

Section 2. Votes and Voting Rights. a) There shall be one person with respect to each Unit Ownership who shall be entitled to vote at any meeting of the Unit Owners. Such Voting Members shall be Owners of a Unit Ownership or may be some person designated by such Unit Owners to act as proxy on his or their behalf and in writing to the Board and shall be revocable at any time by actual notice to the Board of the death or judicially declared incompetence of any designator, or by written notice to the Board by the Unit Owner or Unit Owners. Any or all Unit Owners of a

Association from any source whatsoever, and deposit all such moneys in the name of the Association in such banks, trust companies or other depositaries as shall be selected in accordance with the provisions of Article VII of these Bylaws; and in general perform all the duties incident to the office of Treasurer and such other duties as from time to time may be assigned to him by the President or by the Board.

Section 8. Secretary. The Secretary shall keep the minutes of the meetings of the members and of the Board in one or more books provided for that purpose; see that all notices are mailed in accordance with the provisions of these Bylaws or as required by law; receive all notices on behalf of the Association and, together with the President, execute on behalf of the Association amendments to Condominium instruments and other documents as required or permitted by the Declaration, these Bylaws or the Act; be custodian of the records and, if incorporated, of the seal of the Association and, if the Association is incorporated, see that the seal of the Association is affixed to all documents, the execution of which on behalf of the Association under its seal is duly authorized in accordance with the provisions of these Bylaws; and in general perform all duties incident to the office of Secretary and such other duties as from time to time may be assigned to him by the President or by the Board.

## ARTICLE VI

## POWERS AND DUTIES OF THE ASSOCIATION AND BOARD

Section 1. General Duties, Powers, Etc. of the Board. The Board shall exercise for the Association all powers, duties and authority vested in the Association by the Act and the Condominium Instruments, including but not limited to the following:

(a) Operation, care, upkeep, maintenance, replacement, and improvement of the Common Elements (except the Limited Common Elements), the driveways and sidewalks serving the Units;

(b) Preparation, adoption and distribution of the annual budget for the Property;

(c) Levying of assessments;

(d) Collection of assessments from Unit Owners;

(e) Employment and dismissal of the personnel necessary or advisable for the maintenance and operation of the Common Elements;

(f) Obtaining adequate and appropriate kinds of insurance;

(g) Owning, conveying, encumbering, leasing, and otherwise dealing with Units conveyed to or purchased by it;

(h) Adoption and amendment rules and regulations covering the details of the operation and use of the Property;

(i) Keeping of detailed, accurate records of the receipts and expenditures affecting the and operation of the Property;

(j) Having access to each Unit, from time to time, as may be necessary for the maintenance, repair or replacement of any Common Elements therein or accessible therefrom, or for making emergency repairs therein necessary to prevent damage to the Common Elements or to another Unit or Units. Such entry shall be made with as little inconvenience to the Unit Owner as practicable, and any damage caused thereby shall be repaired by the Board as Common Expense;

(k) Borrowing money at such rates of interest as it may determine; issuing its notes, bonds and other obligations to evidence such borrowing; and securing any of its obligations by such mortgage or giving a security interest in all or any of its property or income;

(l) Paying real estate property taxes, special assessments, and any other special taxes or charges of the State of Illinois or of any political subdivision thereof, or other lawful taxing or assessing body, which are authorized by law to be assessed and levied upon the real property of the condominium (other than assessments on Units not owned by the Association);

(m) Imposing charges for late payments of a Unit Owner's proportionate share of the Common Expense, or any other expenses lawfully agreed upon, and after notice and an opportunity to be heard, levying reasonable fines for violations of the Declaration, Bylaws, and rules and regulations of the Association;

(n) Assigning its rights to future income, including the right to receive Common Expenses assessments;

(o) Recording the dedication of a portion of the Common Elements to a public body for use, as, or in connection with, a street or utility where authorized by the Members under the Act;

(p) Recording the granting of an easement for the laying of cable television cable where authorized by the members under the provisions of Section 14.3 of the Act;

(q) May adopt such reasonable rules and regulations, not inconsistent herewith, as it may deem advisable for the maintenance, administration, management, operation, use, conservation and beautification of the Property, and for the health, comfort, safety and general welfare of the Unit Owners and Occupants of the Property. Written notice of such rules and regulations shall be given to all Unit

Owners and Occupants and the entire Property shall at all times be maintained subject to such rules and regulations.

In the performance of their duties, the officers and members of the Board shall exercise, the care required of a fiduciary of the members.

Section 2. <u>Specific Powers and Duties.</u> (a) Anything herein contained to the contrary notwithstanding, the Board shall have the power:

(a) To engage the services of a manager or managing agent, who may be any person, firm or corporation, upon such terms and compensation as the Association deems fit, and to remove such manager or managing agent at any time, provided any agreement with such manager or managing agent shall extend for not more than three years and must be terminable by either party to such agreement without cause and without payment of a termination fee, upon ninety (90) days or less prior written notice, and thirty (30) days or less prior written notice with cause.

(b) To engage the services of any person (including, but not limited to, accountants and attorneys) deemed necessary by the Association at such compensation as it deemed reasonably by the Association, in the operation, repair, maintenance and management of the Property, or in connection with any duty, responsibility or right of the Association and to remove, at any time, any such personnel;

(c) To establish or maintain one or more bank accounts for the deposit of any funds paid to, or received by, the Association.

(d) To invest any funds of the Association in certificates of deposits, money market funds, or comparable investments.

(e) Upon authorization of a two-third vote of the members of the Board or by affirmative vote of not less than a majority of the Unit Owners at a meeting duly called for such purpose, the Board acting on behalf of all Unit Owners shall have the power to seek relief from or in connection with the assessment or levy of any real property taxes, special assessments and any special taxes or charges of the State of Illinois or any political subdivision thereof, or of any lawful taxing or assessing body, which are authorized by law to be assessed and levied on real property, and to charge and collect all expenses incurred in connection therewith as Common Expenses.

Section 3. <u>Authorized Expenditures.</u> The Board shall acquire and make arrangements for, and pay for out of the Maintenance Fund, in addition to the manager, managing agent or other personnel above provided for, the following:

(a) water, waste removal, heating, electricity, telephone or other necessary utility service for the Common Elements and such services to the Units as are not separately metered or charged to the owners thereof;

(b) such insurance as the Board is required or permitted to obtain as provided in the Declaration;

(c) landscaping, gardening, snow removal, painting, cleaning, tuckpointing, maintenance, decorating, repair and replacement of the Common Elements as described in the Condominium Declaration. Anything in the foregoing to the contrary notwithstanding, and except where the need for repair or replacement is due to the act or omission of a Unit Owner, guest, occupant, family member or pet, the Board shall be responsible for the repair and replacement of all windows;

(d) to pay for any other materials, supplies, furniture, labor, services, maintenance, repairs, structural alterations or assessments which the Board is required to secure or pay for pursuant to the terms of this Declaration or Bylaws of which in its opinion shall be necessary or proper for the maintenance and operation of the Property, as a first class condominium apartment building or for the enforcement of these restrictions;

(e) any amount necessary to discharge any mechanic's lien or other encumbrance levied against the Property or any part thereof which may in the opinion of the Board constitute a lien against the Property or against the Common Elements, rather than merely against the interest therein of particular Unit Owners. Where one or more Unit Owners are responsible for the existence of such lien, they shall be jointly and severally liable for the cost of discharging it and any costs incurred by the Board by reason of said lien or liens shall be specially assessed to said Unit Owners and shall, until paid by such Unit Owners, constitute a lien on the interest of such Unit Owners in the Property, which lien may be perfected and foreclosed in the manner provided in Section 9 of the Act with respect to liens for failure to pay a share of the Common Expenses;

(f) maintenance and repair of any Unit or any other portion of the Property which a Unit Owner is obligated to maintain or repair under the terms hereof, if such maintenance or repair is necessary, in the discretion of the Board, to protect the Common Elements, or any other portion of the Property, and the owner of said Unit has failed or refused to perform said maintenance or repair is delivered by the Board to said Unit Owner; provided that the Board shall levy a special assessment against such Unit for the cost of said maintenance or repair and the amount of such assessment shall constitute a lien on the interest of such Unit Owner in the Property, which lien may be perfected and foreclosed in the manner provided in Section 9 of the Act with respect to liens for failure to pay a share of the Common Expenses; and

(g) maintenance and repair (including payment of real estate taxes and common expenses) with respect to any Unit owned by the Association.

All expenses, charges and costs of the maintenance, repair or replacement of the Common Elements, and any other expenses, charges or costs which the Association may incur or expend pursuant hereto, shall be approved by the

FRED BUCHOLZ     R2016-007904     DUPAGE COUNTY RECORDER

Association, and a written memorandum thereof prepared and signed by the treasurer. These shall be no structural alterations, capital additions to, or capital improvements on, the Common Elements (other than for purposes of repairing, replacing and restoring portions of the Common Elements) requiring an expenditure in excess of Two Thousand Five Hundred Dollars ($2,500.00) without the prior approval of 66 2/3 percent of the Unit Owners. Nothing hereinabove contained in Article VI shall be construed to give the Board, Association or Unit Owners authority to conduct an active business for profit on behalf of all Unit Owners or any of them.

Section 4. Annual Budget. (a) Each year on or before November 1st, the Board shall estimate the annual budget of Common Expenses (the "Annual Budget") including: The total amount required for the cost of wages, materials, insurance, services and supplies which will be required during the ensuing calendar year for the rendering of all services, together with a reasonable amount considered by the Board to be necessary for a reserve for contingencies and replacements, all anticipated assessments and income and each Unit Owner's proposed Common Expense assessment. Each Unit Owner shall receive at least twenty-five (25) days prior to the adoption hereof by the Board, a copy of the proposed annual budget; the annual budget shall also take into account the estimated net available cash income for the year from the operation or use of the Common Elements, if any. The "estimated annual budget" shall be assessed to the Unit Owners according to each Unit Owners; percentage of ownership in the Common Elements as set forth in Exhibit "C" attached hereto. Each Unit Owner shall receive notice in the same manner as is provided in this Declaration for membership meetings, of any meeting of the Board concerning the adoption of the proposed annual budget or any increase, or establishment of an assessment; unless a written waiver of such notice is signed by the person or persons entitled to such notice before the meeting is convened. On or before January 1, of the ensuing year, and the first of each and every month of said year, said Unit Owner jointly and severally shall be personally liable for and obligated to pay to the Board or as it may direct one-twelfth (1/12th) of the assessment against his Unit Ownership made pursuant to this Section. On or before April 1 of each calendar year, the Board shall supply to all Unit Owners an itemized accounting of the Common Expenses for the preceding year actually incurred and paid, together with a tabulation of the amounts collected pursuant to the budget or assessments, and showing the net excess or deficit of income over expenditures plus reserves. Any amount accumulated in excess of the amount required for actual expenses and reserves shall be credited according to such Unit Owner's percentage of ownership in the Common Elements to the next monthly installments due from Unit Owners under the current year estimate, until exhausted, and any net shortage shall be added according to each Unit Owners percentage of ownership in the Common Elements to the installments due in the succeeding six (6) months after rendering of the accounting.

The failure or delay of the Association to prepare or serve the annual or adjusted budget on the Unit Owners shall not constitute a waiver or release in any manner of the Unit Owner's obligation to pay the maintenance and other costs and

necessary Reserves, as herein provided, whenever the same shall be determined, and in the absence of any annual or adjusted budget, the Unit Owners shall continue to pay the monthly assessment charges at the then existing monthly rate established for the previous period until the monthly assessment payment which is due more than ten (10) days after such new annual or adjusted budget shall have been mailed.

(b) If an adopted Annual Budget requires assessments against the Unit Owners in any fiscal or calendar year exceeding 115% of the assessments for the preceding year, the Board, upon written petition by Unit Owners with 20% of the votes of the Association filed within 14 days of the Board action, shall call a Special Meeting of the Unit Owners within 30 days of the date of filing of the petition to consider the Annual Budget. Unless a majority of the votes of the Unit Owners are cast at the meeting to reject the Annual Budget, it shall be deemed to be ratified. If a majority of votes of the Unit Owners are cast to reject the Annual Budget at a Special Meeting of the Unit Owners, a meeting of the Board shall be held within 30 days of the date of such Special Meeting to prepare a revised Annual Budget to send to the Unit Owners together with a notice of the meeting of the Board at which adoption of such Annual Budget will be considered.

Section 5. <u>Initial Estimate of Annual Budget.</u> Intentionally omitted.

Section 6. <u>Use of Funds.</u> All funds collected hereunder shall be held and expended for the purpose designated herein and (except for such special assessments as may be levied hereunder against less than all the Unit Owners and for such adjustments as may be required to reflect delinquent or prepaid assessments) shall be deemed to be held for the benefit, use and account of all the Unit Owners in the percentage set forth in Exhibit "C".

Section 7. <u>Insurance.</u> Anything herein or in the Declaration to the contrary notwithstanding, the Association may charge to fewer than all Unit Owners such portion of the insurance premium for insurance the Association is required or permitted to obtain which reflects increased charges for coverage on the Units owned by such Unit Owners, on such reasonable basis as the Association shall determine. Such charge shall be considered a common expense with respect to the Units owned by such Unit Owners for all purposes herein and under the Declaration.

Section 8. <u>Annual Accounting.</u> On or before the 1st day of April of each calendar year, the Association shall supply to all Unit Owners an itemized accounting of the Common Expenses for the preceding calendar year actually incurred and paid together with a tabulation of the amounts collected pursuant to the budget or assessment, and showing the net excess or deficit of income over expenditures plus Reserves. Upon the written request of any of FHLMC, FNMA, HUD or VA, the Association shall prepare and furnish within a reasonable time an audited financial statement of the Association for the preceding calendar year. Any amount accumulated in excess of the amount required for actual expenses and Reserves shall be credited according to each Unit Owner's percentage of ownership in the Common

Elements to the next monthly installments due form the Unit Owners under the current year's Annual Budget, until exhausted, and any net shortage shall be added, according to each Unit Owner's percentage of ownership of the Common Elements, to the installments due in the succeeding six months after rendering of the accounting.

Section 9. <u>Reserves.</u> The Association may build up and maintain a reasonable Reserve for operations, contingencies and replacement. To establish such Reserve, the Developer shall collect from each Unit Owner upon conveyance by Pinnacle of a Unit to such Unit Owner, an amount equal to three months assessments. Extraordinary expenditures or non-recurring Common Expenses, any Common Expense not set forth in the budget as adopted, and any increase in assessments not originally included in the Annual Budget which may become necessary during the year shall be charged first against such Reserve. In addition, the Association shall have the right to segregate all or any portion of the Reserve for any specific replacement or contingency upon such conditions as the Association deems appropriate. If said Annual Budget proves inadequate for any reason, including nonpayment of any Unit Owner's assessment, or any non-recurring Common Expense or any Common Expense not set forth in the Annual Budget as adopted, the Association may at any time levy a further assessment, which shall be assessed to the Unit Owners according to each Unit Owner's percentage of ownership in the Common Elements, and which may be payable in one lump sum or such installments as the Association may determine. The Board shall serve notice of such further assessment on all Unit Owners (in the manner provided in the Bylaws) by a statement in writing giving the amount and reasons therefore, and such further assessment shall become effective and shall be payable at such time or times as determined by the Association. All Unit Owners shall be obligated to pay the further assessment.

Section 10.<u>Special Assessments.</u> If said Annual Budget proves inadequate for any reason, including nonpayment of any Unit Owner's assessment, or any non-recurring Common Expense or any Common Expense not set forth in the Annual Budget as adopted, the Board may at any time levy a further assessment, which shall be assessed to the Unit Owners according to each Unit Owner's percentage of ownership in the Common Elements, and which may be payable in one lump sum or such installments as the Board may determine. The Board shall serve notice of such further assessment on all Unit Owners (as provided in Section 4, Article III of the Bylaws) by a statement in writing giving the amount and reasons therefore, and such further assessment shall become effective and shall be payable at such time or time as determined by the Board.   All Unit Owner shall be obligated to pay the further assessment.

Section 11.<u>Books of Account, Default, Statement of Account.</u> (a) The Board shall keep full and correct books of account tin chronological order of the receipt and expenditures affecting the Common Elements, specifying and itemizing the maintenance and repair expenses of the Common Elements and any other expenses incurred. Such records and the vouchers authorizing the payments shall be available for inspection by any Unit Owner or any representative of a Unit Owner duly

authorized in writing, at such reasonable time or times during normal business hours as may be requested by the Unit Owner as set forth in Section 19 of the Illinois Condominium Property Act. Upon ten (10) days notice to the Board and payment of a reasonable fee, any Unit Owner shall be furnished a statement of his account setting forth the amount of any unpaid assessments or other charges due and owing from such Unit Owner. All mortgagees of the units shall have the right to inspect the books at reasonable time or times during normal business hours as set forth in Section 19 of the Illinois Condominium Property Act.

(b) If a Unit Owner is in default in the monthly payment of the aforesaid charges or assessments for thirty (30) days, the Association may assess a service charge of 4% of the balance of the aforesaid charges and assessments for each month, or part thereof, that said balance, or any part thereof remains unpaid. The Association may bring suit for and on behalf of itself and as provided by law; and there shall be added to the amount due, the costs of said suit, together with legal interest and reasonable attorneys' fees to be fixed by the Court. In addition, the Association may also take possession of such defaulting Unit Owner's interest in the Property and maintain an action for possession of the Unit in the manner provided by law. No Unit Owner may waive or otherwise escape liability for the assessment provided for herein by nonuse of the Common Elements or abandonment of his Unit. Each such assessment, together with interest, costs, and attorneys' fees shall also be the personal obligation of the person who was the Unit Owner at the time the assessment fell due. The personal obligation for delinquent assessments shall not pass to successors in title or interest unless assumed by them, or required by applicable law.

(c) Upon ten (10) days' notice to the Association, and the payment of a reasonable fee fixed by the Association, any Unit Owner shall be furnished a statement of his account setting forth the amount of any unpaid assessments or other charges due and owing from such Unit Owner.

(d) Nonuse. No Unit Owner may waive or otherwise escape liability for the assessments provided for herein by nonuse of the Common Elements or abandonment of his Unit.

Section 12.Priority of Liens. Any mortgage or trust deed owned or held by a First Mortgagee and recorded prior to a Unit Owner's refusal or failure to pay his share of the monthly assessment when due shall be superior to the lien of such unpaid Common Expenses and to all assessments for Common Expenses which become due and are unpaid subsequent to the date of recording of such first mortgage or first trust deed. Any First Mortgagee who comes into possession of a Unit pursuant to the remedies provided in the mortgage or trust deed, foreclosure of the mortgage or trust deed or deed (or assignment) in lieu of foreclosure shall not be liable for, and shall take the Unit and its proportionate interest in the Common Elements free from, claims for unpaid common or special assessments levied by the Association which accrue prior to the date of possession as aforesaid to the extent provided by law.

**Account Transaction Report**
Full Transaction History

**Keough & Moody, P.C.**

| | | | | | |
|---|---|---|---|---|---|
| **Association:** | Enclave at Country Lakes | | | | |
| **Owner Name** | Shepard, Alfrieda | **Mailing Address:** | 2580 Golf Ridge Cir | | |
| **Property Address** | 2580 Golf Ridge Cir | | Naperville, IL 60563 | | |
| **Customer Id** | R0321843L0272477 | | | | |
| **Last Referral:** | 01/30/2018 | | | | |

**Beginning Balance:** 0.00

| Date | Document Number | Description | Charge | Payment | Balance |
|---|---|---|---|---|---|
| 04/30/2015 | LFC-2015INC-95428-12 | Late Fee Charges - Incoming | 20.93 | | 20.93 |
| 04/30/2015 | LEGL-2015INC-95430-4 | Attorney Fee Charges - Incoming | 231.71 | | 252.64 |
| 05/01/2015 | RAS-2015M5-108860-164 | Assessment for May 2015 | 220.93 | | 473.57 |
| 06/01/2015 | RAS-2015M6-96649-181 | Assessment for June 2015 | 220.93 | | 694.50 |
| 06/05/2015 | LFC-2015M6-123663 | Late Payment Charges for June 2015 | 25.00 | | 719.50 |
| 07/01/2015 | RAS-2015M7-119471-229 | Assessment for July 2015 | 220.93 | | 940.43 |
| 07/05/2015 | LFC-2015M7-154600 | Late Payment Charges for July 2015 | 25.00 | | 965.43 |
| 08/01/2015 | RAS-2015M8-140660-238 | Assessment for August 2015 | 220.93 | | 1,186.36 |
| 08/05/2015 | LEGL-178650-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-inv 143470 | 80.00 | | 1,266.36 |
| 08/05/2015 | LFC-2015M8-185639 | Late Payment Charges for August 2015 | 25.00 | | 1,291.36 |
| 09/01/2015 | RAS-2015M9-177534-236 | Assessment for September 2015 | 220.93 | | 1,512.29 |
| 09/05/2015 | LFC-2015M9-230923 | Late Payment Charges for September 2015 | 25.00 | | 1,537.29 |
| 09/28/2015 | LEGL-256097-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-inv 147054 | 225.00 | | 1,762.29 |
| 10/01/2015 | RAS-2015M10-219012-228 | Assessment for October 2015 | 220.93 | | 1,983.22 |
| 10/06/2015 | LFC-2015M10-279983 | Late Payment Charges for October 2015 | 25.00 | | 2,008.22 |
| 10/22/2015 | LEGL-291862-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-inv 148604 | 857.00 | | 2,865.22 |
| 10/26/2015 | REVERSED-LEGL-291862-1 | Invoice Reversal (re: LEGL-291862-1): Legal Fees will be included under separate attorney fee affidavit | -857.00 | | 2,008.22 |
| 11/01/2015 | RAS-2015M11-258493-154 | Assessment for November 2015 | 220.93 | | 2,229.15 |
| 11/05/2015 | LFC-2015M11-314766 | Late Payment Charges for November 2015 | 25.00 | | 2,254.15 |
| 11/18/2015 | LEGL-316502-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-inv 150034 | 115.00 | | 2,369.15 |
| 12/01/2015 | RAS-2015M12-295091-157 | Assessment for December 2015 | 220.93 | | 2,590.08 |
| 12/05/2015 | LFC-2015M12-354116 | Late Payment Charges for December 2015 | 25.00 | | 2,615.08 |
| 01/01/2016 | RAS-2016M1-378494-216 | Assessment for January 2016 | 224.98 | | 2,840.06 |
| 01/11/2016 | LEGL-388299-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 153045 | 142.50 | | 2,982.56 |
| 02/01/2016 | RAS-2016M2-378495-193 | Assessment for February 2016 | 224.98 | | 3,207.54 |
| 02/05/2016 | LEGL-450898-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 154639 | 145.00 | | 3,352.54 |
| 02/22/2016 | LEGL-491128-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 150034 | 115.00 | | 3,467.54 |
| 02/22/2016 | LEGL-491131-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 148604 | 857.00 | | 4,324.54 |
| 02/23/2016 | 103 | Payment | | 225.00 | 4,099.54 |

| | | | | | |
|---|---|---|---|---|---|
| 03/01/2016 | RAS-2016M3-448365-166 | Assessment for March 2016 | 224.98 | | 4,324.52 |
| 03/04/2016 | LEGL-498918-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 156062 | 648.00 | | 4,972.52 |
| 03/05/2016 | LFC-2016M3-516045 | Late Payment Charges for March 2016 | 25.00 | | 4,997.52 |
| 03/22/2016 | REVERSED-LEGL-491128-1 | Invoice Reversal (re: LEGL-491128-1): duplicate invoice | -115.00 | | 4,882.52 |
| 03/22/2016 | 104 | Payment | | 225.00 | 4,657.52 |
| 04/01/2016 | RAS-2016M4-496234-251 | Assessment for April 2016 | 224.98 | | 4,882.50 |
| 04/05/2016 | LFC-2016M4-552003 | Late Payment Charges for April 2016 | 25.00 | | 4,907.50 |
| 04/05/2016 | LEGL-545469-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 157822 | 145.00 | | 5,052.50 |
| 05/01/2016 | RAS-2016M5-534937-252 | Assessment for May 2016 | 224.98 | | 5,277.48 |
| 05/04/2016 | 0106 | Payment | | 225.00 | 5,052.48 |
| 05/04/2016 | 0107 | Payment | | 150.00 | 4,902.48 |
| 05/05/2016 | LFC-2016M5-608398 | Late Payment Charges for May 2016 | 25.00 | | 4,927.48 |
| 05/06/2016 | 109 | Payment | | 225.00 | 4,702.48 |
| 05/09/2016 | LEGL-608050-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 159567 BK | 435.00 | | 5,137.48 |
| 06/01/2016 | RAS-2016M6-580925-237 | Assessment for June 2016 | 224.98 | | 5,362.46 |
| 06/05/2016 | LFC-2016M6-651293 | Late Payment Charges for June 2016 | 25.00 | | 5,387.46 |
| 06/13/2016 | 110 | Payment | | 225.00 | 5,162.46 |
| 06/13/2016 | REVERSED-110 | Payment Reversal (re: 110). Account is in foreclosure - sending payment to collections | | -225.00 | 5,387.46 |
| 06/20/2016 | 0110 | Payment | | 225.00 | 5,162.46 |
| 07/01/2016 | RAS-2016M7-634842-138 | Assessment for July 2016 | 224.98 | | 5,387.44 |
| 07/05/2016 | LFC-2016M7-678583 | Late Payment Charges for July 2016 | 25.00 | | 5,412.44 |
| 07/07/2016 | LEGL-669599-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 162889 | 358.00 | | 5,770.44 |
| 07/07/2016 | LEGL-669600-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 162890 BK | 145.00 | | 5,915.44 |
| 08/01/2016 | RAS-2016M8-667313-222 | Assessment for August 2016 | 224.98 | | 6,140.42 |
| 08/03/2016 | LEGL-719860-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 164628 | 290.00 | | 6,430.42 |
| 08/03/2016 | LEGL-719862-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 164929 BK | 145.00 | | 6,575.42 |
| 08/05/2016 | LFC-2016M8-743502 | Late Payment Charges for August 2016 | 25.00 | | 6,600.42 |
| 08/08/2016 | 0111 | Payment | | 225.00 | 6,375.42 |
| 09/01/2016 | RAS-2016M9-717741-145 | Assessment for September 2016 | 224.98 | | 6,600.40 |
| 09/06/2016 | LFC-2016M9-772447 | Late Payment Charges for September 2016 | 25.00 | | 6,625.40 |
| 09/23/2016 | 0114 | Payment | | 225.00 | 6,400.40 |
| 10/01/2016 | RAS-2016M10-759947-143 | Assessment for October 2016 | 224.98 | | 6,625.38 |
| 10/05/2016 | LFC-2016M10-833114 | Late Payment Charges for October 2016 | 25.00 | | 6,650.38 |
| 10/05/2016 | LEGL-821732-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 167337 BK | 290.00 | | 6,940.38 |
| 10/26/2016 | 0115 | Payment | | 225.00 | 6,715.38 |
| 10/27/2016 | 1648128 | Payment | | 184.46 | 6,530.92 |
| 11/01/2016 | RAS-2016M11-809701-240 | Assessment for November 2016 | 224.98 | | 6,755.90 |

| | | | | | |
|---|---|---|---|---|---|
| 11/05/2016 | LFC-2016M11-867694 | Late Payment Charges for November 2016 | 25.00 | | 6,780.90 |
| 12/01/2016 | RAS-2016M12-853769-193 | Assessment for December 2016 | 224.98 | | 7,005.88 |
| 12/05/2016 | 1650493 | Payment | | 184.46 | 6,821.42 |
| 12/06/2016 | LFC-2016M12-906092 | Late Payment Charges for December 2016 | 25.00 | | 6,846.42 |
| 12/13/2016 | 0121 | Payment | | 225.00 | 6,621.42 |
| 12/29/2016 | 1652766 | Payment | | 489.32 | 6,132.10 |
| 01/01/2017 | RAS-2017M1-892598-199 | Assessment for January 2017 | 231.73 | | 6,363.83 |
| 01/05/2017 | LFC-2017M1-932770 | Late Payment Charges for January 2017 | 25.00 | | 6,388.83 |
| 01/11/2017 | 123 | Payment | | 231.00 | 6,157.83 |
| 02/01/2017 | RAS-2017M2-922080-252 | Assessment for February 2017 | 231.73 | | 6,389.56 |
| 02/02/2017 | 1655085 | Payment | | 184.46 | 6,205.10 |
| 02/05/2017 | LFC-2017M2-972756 | Late Payment Charges for February 2017 | 25.00 | | 6,230.10 |
| 02/08/2017 | 126 | Payment | | 231.00 | 5,999.10 |
| 02/28/2017 | 1657652 | Payment | | 184.46 | 5,814.64 |
| 03/01/2017 | RAS-2017M3-950981-159 | Assessment for March 2017 | 231.73 | | 6,046.37 |
| 03/05/2017 | LFC-2017M3-1002563 | Late Payment Charges for March 2017 | 25.00 | | 6,071.37 |
| 03/10/2017 | 127 | Payment | | 231.00 | 5,840.37 |
| 03/24/2017 | 1660173 | Payment | | 184.46 | 5,655.91 |
| 04/01/2017 | RAS-2017M4-983845-243 | Assessment for April 2017 | 231.73 | | 5,887.64 |
| 04/05/2017 | LFC-2017M4-1051618 | Late Payment Charges for April 2017 | 25.00 | | 5,912.64 |
| 04/27/2017 | 1662533 | Payment | | 184.46 | 5,728.18 |
| 05/01/2017 | 0129 | Payment | | 231.00 | 5,497.18 |
| 05/01/2017 | RAS-2017M5-1037208-240 | Assessment for May 2017 | 231.73 | | 5,728.91 |
| 05/05/2017 | LFC-2017M5-1092529 | Late Payment Charges for May 2017 | 25.00 | | 5,753.91 |
| 05/31/2017 | 1664857 | Payment | | 184.46 | 5,569.45 |
| 06/01/2017 | RAS-2017M6-1077566-137 | Assessment for June 2017 | 231.73 | | 5,801.18 |
| 06/06/2017 | LFC-2017M6-1132618 | Late Payment Charges for June 2017 | 25.00 | | 5,826.18 |
| 06/23/2017 | 0134 | Payment | | 231.00 | 5,595.18 |
| 06/23/2017 | 1667088 | Payment | | 184.46 | 5,410.72 |
| 07/01/2017 | RAS-2017M7-1116555-178 | Assessment for July 2017 | 231.73 | | 5,642.45 |
| 07/05/2017 | LFC-2017M7-1163085 | Late Payment Charges for July 2017 | 25.00 | | 5,667.45 |
| 07/27/2017 | 9026532816 | Payment | | 256.73 | 5,410.72 |
| 07/27/2017 | 1669296 | Payment | | 184.46 | 5,226.26 |
| 08/01/2017 | RAS-2017M8-1150478-120 | Assessment for August 2017 | 231.73 | | 5,457.99 |
| 08/05/2017 | LFC-2017M8-1218545 | Late Payment Charges for August 2017 | 25.00 | | 5,482.99 |
| 08/31/2017 | 1671590 | Payment | | 30.07 | 5,452.92 |
| 09/01/2017 | RAS-2017M9-1187486-264 | Assessment for September 2017 | 231.73 | | 5,684.65 |
| 09/05/2017 | LFC-2017M9-1248506 | Late Payment Charges for September 2017 | 25.00 | | 5,709.65 |
| 10/01/2017 | RAS-2017M10-1233766-222 | Assessment for October 2017 | 231.73 | | 5,941.38 |
| 10/05/2017 | LFC-2017M10-1281335 | Late Payment Charges for October 2017 | 25.00 | | 5,966.38 |
| 11/01/2017 | RAS-2017M11-1266553-303 | Assessment for November 2017 | 231.73 | | 6,198.11 |
| 11/16/2017 | LFC-2017M11-1336377 | Late Payment Charges for November 2017 | 25.00 | | 6,223.11 |
| 11/30/2017 | 1678271 | Payment | | 707.77 | 5,515.34 |
| 12/01/2017 | RAS-2017M12-1306915-302 | Assessment for December 2017 | 231.73 | | 5,747.07 |
| 12/05/2017 | LEGL-1343862-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 187142 BK | 72.50 | | 5,819.57 |
| 12/16/2017 | LFC-2017M12-1366321 | Late Payment Charges for December 2017 | 25.00 | | 5,844.57 |
| 01/01/2018 | RAS-2018M1-1341398-236 | Assessment for January 2018 | 238.68 | | 6,083.25 |
| 01/16/2018 | LFC-2018M1-1396277 | Late Payment Charges for January 2018 | 25.00 | | 6,108.25 |
| 02/01/2018 | RAS-2018M2-1371457-206 | Assessment for February 2018 | 238.68 | | 6,346.93 |
| 02/16/2018 | LFC-2018M2-1439930 | Late Payment Charges for February 2018 | 25.00 | | 6,371.93 |

| 03/01/2018 | RAS-2018M3-1404647-181 | Assessment for March 2018 | 238.68 | | 6,610.61 |
| 03/16/2018 | LFC-2018M3-1477523 | Late Payment Charges for March 2018 | 25.00 | | 6,635.61 |
| 04/01/2018 | RAS-2018M4-1444524-163 | Assessment for April 2018 | 238.68 | | 6,874.29 |
| 04/04/2018 | LEGL-1485159-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 190301 | 300.00 | | 7,174.29 |
| 04/17/2018 | LFC-2018M4-1514080 | Late Payment Charges for April 2018 | 25.00 | | 7,199.29 |
| 05/01/2018 | RAS-2018M5-1483295-257 | Assessment for May 2018 | 238.68 | | 7,437.97 |
| 05/03/2018 | LEGL-1522340-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 191187 | 150.00 | | 7,587.97 |
| 05/16/2018 | LFC-2018M5-1551204 | Late Payment Charges for May 2018 | 25.00 | | 7,612.97 |
| 05/18/2018 | 0144 | Payment | | 238.68 | 7,374.29 |
| 05/30/2018 | LEGL-1558032-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 191995 | 362.00 | | 7,736.29 |
| 06/01/2018 | RAS-2018M6-1520100-132 | Assessment for June 2018 | 238.68 | | 7,974.97 |
| 06/16/2018 | LFC-2018M6-1587531 | Late Payment Charges for June 2018 | 25.00 | | 7,999.97 |
| 07/01/2018 | RAS-2018M7-1559068-196 | Assessment for July 2018 | 238.68 | | 8,238.65 |
| 07/03/2018 | LEGL-1596746-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 192874 | 300.00 | | 8,538.65 |
| 07/17/2018 | LFC-2018M7-1626136 | Late Payment Charges for July 2018 | 25.00 | | 8,563.65 |
| 08/01/2018 | RAS-2018M8-1595719-186 | Assessment for August 2018 | 238.68 | | 8,802.33 |
| 08/03/2018 | LEGL-1635606-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 193870 BK | 174.00 | | 8,976.33 |
| 08/06/2018 | 15064 | Payment | | 238.68 | 8,737.65 |
| | | | **Total Due:** | | 8,737.65 |

1280
1000

I, Chris Kachiroubas, Clerk of the 18th Judicial Circuit Court
DuPage County, Illinois, do hereby certify the above correct.

Date 05/22/2018 *** Electronically Issued ***

CHRIS KACHIROUBAS, Clerk

By       CERVENY KIMBERLY
                Deputy Clerk
This order is the command of the Circuit Court and violation thereof is
subject to the penalty of the law.   4284324

**IN THE CIRCUIT COURT OF THE ~~___TEENTH JUDICIAL CIRCUIT~~**
**DUPAGE C~~___~~ ILLINOIS**

THE ENCLAVE AT COUNTRY LAKES
CONDOMINIUM ASSOCIATION,
an Illinois Not-For-Profit Corporation ,
Plaintiff,

v.

ALFRIEDA M. SHEPARD,
and Any/All Unknown Tenants and/or Occupants
Defendant(s).

)
)
)
)
)
)
)
)
)

Case Number 15 LM 2723

### ORDER
### (Forcible Entry and Detainer)

The above entitled cause having been heard by the Court the complaint filed herein under the provisions of the statute entitled "An Act In Regard To Forcible Entry and Detainer," and Acts amendatory thereof and supplemental thereto, and having heard to the proofs adduced by the parties hereto, and being now fully advised in the premises:

**THE COURT FINDS** that the Plaintiff is entitled to the possession of the real estate hereinafter described, and that such possession is wrongfully withheld from the Plaintiff by the Defendant herein, and that there is due and owing to the Plaintiff from the Defendant's failure to pay sums for use and possession in the amount of **$2,008.22** for unpaid assessments and/or violation charges. **IT IS ACCORDINGLY HEREBY ORDERED** that the Plaintiff have and recover from the Defendant(s) herein, the immediate possession of the real estate described as:

### 2580 Golf Ridge Circle Naperville, Illinois

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Plaintiff have judgment against the Defendant for the sum of **$2,008.22** for unpaid assessments and/or violation charges, plus attorneys fees of **$675.00** for sums due to Plaintiff, and **$297.00** for the costs of this suit, and that immediate execution may issue thereon.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that possession hereon be, and the same is, hereby stayed until **DECEMBER 28, 2015**, and that on or after said date, such order shall issue on Plaintiff's request without further notice or order of Court being required.

Keough & Moody, P.C.
Attorney No. 44771
1250 East Diehl Road, Suite 405
Naperville, Illinois  60563
(630) 369-2700
collection@kmlegal.com

E N T E R:

_____
JUDGE

Date: OCTOBER 29, 2015